IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| SCOTT WILSON ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No: |
| RUTHERFORD COUNTY, ) | |
| TENNESSEE ) | |
| ) | Judge: |
| and ) | |
| ) | |
| JUDGE TRAVIS LAMPLEY, ) | JURY DEMAND |
| in both his individual and ) | |
| official capacities; ) | |
| ) | |
|    *Defendants.* ) | |

## COMPLAINT

1. Plaintiff brings this action against Defendants for declaratory relief, injunctive relief, and damages pursuant to 42 U.S.C. § 1983 for illegally restricting Plaintiff from disseminating his public court records related to his custody case. Plaintiff seeks compensation and other just and appropriate relief for these violations of his rights.

## **PARTIES**

2. **Plaintiff Scott Wilson ("Dr. Wilson")** is an adult resident of Rutherford County, Tennessee.

3. **Defendant Rutherford County, Tennessee ("Rutherford County")** is a governmental entity organized under the laws of the State of Tennessee and located in Rutherford County, Tennessee.

1

4. **Defendant Travis Lampley ("Judge Lampley")** is an adult resident of Tennessee, who on information and belief resides in Rutherford County, Tennessee. Judge Lampley is the elected Rutherford County Juvenile Court Judge. Lampley is sued in both his individual and official capacities, for actions he has taken and continues to take on an ongoing basis as the County's Juvenile Court judge and as final County policymaker with regard to Juvenile Court administrative rules.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because Defendants reside in this district and the events at issue in this lawsuit occurred in this district.

## FACTUAL BACKGROUND

### A. Dr. Wilson

6. Dr. Jerry Scott Wilson ("Dr. Wilson") is a board-certified psychiatrist and a military veteran who served in Operation Iraqi Freedom. Dr. Wilson is also the father of a young daughter, Plaintiff C.W., who was born in 2020.

7. Dr. Wilson presently has residences in both Rutherford County, Tennessee and in Miami, Florida, and maintains employment in both locations.

8. Dr. Wilson's Rutherford County job is as Staff Physician (PT), Behavioral Health Medical Director for Cedar Recovery of Middle Tennessee.

9. Dr. Wilson's Miami job is as a Staff Psychiatrist for the Mental Health and Behavioral Sciences Service Bruce W. Carter VAMC in Miami.

## B. Dr. Wilson's state court custody litigation

10. Dr. Wilson was not married to his daughter's mother, and in April 2022 their relationship ended. Dr. Wilson has been involved in contentious custody litigation in the Tennessee state courts with his daughter's mother since then.

11. This litigation which remains ongoing, after certain adverse rulings against Dr. Wilson were reversed on appeal in December 2024. *Lehmann v. Wilson*, 2024 Tenn. App. LEXIS 526 (Tenn. App. 2024).

12. Dr. Wilson has a separate pending federal court case in the U.S. Middle District of Tennessee, U.S. Middle District of Tenn. Case No. 3:24-cv-1005, detailing the history of that litigation and the injustice he has experienced in it. Through that case, Dr. Wilson seeks damages and declaratory relief against the County, the judicial officers involved, and two Sheriff's office deputies who arrested him.

13. Although for a time litigation relating to Dr. Wilson's daughter was simultaneously taking place in both the chancery and the juvenile court, the case was ultimately resolved by the juvenile court.

14. As suggested by Dr. Wilson's victory on appeal, the juvenile court improperly ruled against Dr. Wilson in critical respects, *e.g.* arbitrarily stripping him of his parental "bill of rights" rights (T.C.A. §§ 36-6-101, 36-6-110) and arbitrarily imposing an unwarranted supervision requirement on him as a prerequisite to having his daughter for overnight visits. *See Lehmann v. Wilson*, 2024 Tenn. App. LEXIS 526 (Tenn. App. 2024).

15. Dr. Wilson's custody litigation is now back in the juvenile court on remand, in front of a special judge after the original judicial officers involved in his case recused themselves.

### C. Rutherford County's "Secret Court" policy

16. In addition to his separate federal court case, Dr. Wilson has sought to impose accountability on the County's juvenile court system through other means, including reports to the Tennessee Board of Judicial Conduct, the Tennessee Board of Professional Responsibility, and other state agencies.

17. However, Dr. Wilson's efforts to obtain review have been stymied by Rutherford County's Juvenile Court Local Rules, which state:

> **2.12    CONFIDENTIAL RECORDS**
>
> All records submitted or filed with the Rutherford County Juvenile Court shall be confidential records (which includes, but is not limited to, medical records or evaluations, mental health records or evaluations, substance abuse assessment/treatment records, drug screen results, reports from the Tennessee Department of Children's Services or other agencies, CASA reports and probation reports) and shall not be disclosed or re-released to anyone for any purpose other than the proceedings currently before this Court without further authorization from the Judge of the Rutherford County Juvenile Court.

18. The County's policy is not in any way mandated by Tennessee state law, which generally makes juvenile court proceedings related to delinquency or dependency/neglect confidential, but does not likewise make custody proceeding records confidential.

4

19. Indeed, even if Tennessee law did make custody proceedings in juvenile court confidential, such law would be unconstitutional because of its arbitrariness. Tennessee's chancery and circuit courts have concurrent jurisdiction with the juvenile courts over custody proceedings, and there is no valid reason to make the same exact type of proceedings' confidentiality depend on which forum the first litigant to reach the courthouse chooses. T.C.A. § 37-1-104(d), (f) (juvenile court has concurrent jurisdiction over child support and custody proceedings).

20. In addition, the County's policies also arbitrarily make Juvenile Court custody proceedings "closed hearings" that are not open to the public:

> **2.13 CONDUCT OF TRIALS**.
>
> Proceedings in the Court shall be closed hearings except in those cases where the public is allowed by statute. In juvenile delinquency proceedings, a parent or guardian must be present at every adjudicatory hearing.

21. On May 2, 2024, Dr. Wilson filed a motion pursuant to the County's local rule asking the Juvenile Court to permit him to disclose certain juvenile court records, in particular the September 2023 final order which went up on appeal. The motion was set to be heard on July 19, 2024, and then reset to August 8, 2024.

22. However, on August 8, 2024 the Juvenile Court stayed Dr. Wilson's motion indefinitely.

23. As of the filing of this complaint, the motion requesting permission to disclose the custody case filings remains stayed.

24. Dr. Wilson would face potential contempt and incarceration if he were to share his custody case records, even the September 2023 order that was reversed in part on appeal.

5

25. The County's prohibition on Dr. Wilson sharing the court filings prevents him from being able to fully communicate his experience with the juvenile court system, from publicizing its inequities, and from seeking redress in the forums prescribed by Tennessee law for this purpose.

**D. The County's policy is in conflict with Tennessee's history and traditions in unwed custody cases, and constitutes a "two-tiered" justice system**

26. In the 19th century, Tennessee vested jurisdiction over claims involving children born out of wedlock (known as bastardy proceedings) in the County Courts, which were open to the public:

> "Before the passage of these acts the jurisdiction of the County Court was exclusive in questions of filiation arising under the Act of 1741, c. 14. The bond which that act requires to be given for the indemnification of the county, is to be made payable to the justices of the County Court.
>
> One condition of the bond is, that the party shall perform such order, touching the maintenance of the bastard child, as that court may from time to time make. The Act of 1822, c. 29, section 2, provides that at the end of three years allowances shall cease, and that the County Court shall dispose of the bastard child as shall most conduce to its interest, either by giving it to the reputed father, or binding it out to some suitable person in their discretion."

*Kirkpatrick v. State*, 19 Tenn. 124, 125 (1838)

27. Bastardy proceedings in Tennessee were part of regular County Court dockets and were open to the press and general public.

28. Custody determinations incidental to bastardy actions, such as "giving it to the reputed father" or "binding it out" to another family, occurred in public county court sessions.

29. In 1911, Tennessee passed legislation establishing juvenile courts for the "protection of our children, and … expressly authorized [the juvenile courts] to remove delinquent or

6

dependent children from unfavorable surroundings and adjudicate their proper custody, and separate them from their parents when such action appears to be for the best interests of the child." *State v. West*, 139 Tenn. 522 (1918).

30. The jurisdiction of the juvenile courts expanded during the 20th century to encompass the adjudication of custody disputes between unmarried parents, even in the absence of dependency, neglect, or abuse.

31. Public access plays a significant positive role in the functioning of civil child custody proceedings by ensuring due process, accountability through public oversight, and equal treatment under the law.

32. By maintaining a two-tiered judicial system for married parents versus unmarried parents litigating civil custody claims, Rutherford County overtly discriminates against unmarried fathers like Plaintiff Wilson.

33. These separate systems are evidenced by a comparison of the County's Local Juvenile Court Rules with the Tennessee 16th Judicial District's Chancery and Circuit Court Rules:

    a. Right to be heard by an elected judge:
        i. Local Juvenile Court Rule 2.11 provides that an unelected magistrate may hear custody cases; whereas,
        ii. Parties in the Circuit and Chancery Court have the right to trial before an elected judge.

    b. Confidentiality of court records:
        i. Local Juvenile Court Rule 2.12 deems all records submitted or filed with the juvenile court as confidential, even basic filings like parenting plans or

7

final judgments, and conveys unfettered discretion to the Juvenile Court to authorize exceptions; whereas,

    ii. Chancery and Circuit Court filings, including motions, pleadings, and orders, are public records unless sealed for good cause, ensuring visibility into how custody decisions are made.

c. Open vs. closed hearings:

    i. Local Juvenile Court Rule 2.13 mandates that "Proceedings in the Court shall be closed hearings except in those cases where the public is allowed by statute."

    ii. No comparable rule exists in the Circuit of Chancery Courts pursuant to the Chancery and Circuit Courts Rules – such hearings are generally open.

d. Trial procedures and scheduling:

    i. The Local Juvenile Court rules specify only that the court may exclude the general public from any proceeding in its discretion.

    ii. The 16th Judicial District's Chancery and Circuit Rules 2 & 3 standardize trial scheduling procedures and requires structured pretrial exchanges of witnesses and exhibit lists.

e. Rules of procedure:

    i. Local Juvenile Court Rule 4.0 begins by stating that "All motions are subject to the requirements of Rule 105, *Rules of Juvenile Practice and Procedure.*" Notably, this rule misstates of the law: The Tennessee Rules of Civil Procedure, not the Rules of Juvenile Procedure, apply in civil

8

Case 3:25-cv-00542   Document 1   Filed 05/12/25   Page 8 of 15 PageID #: 8

custody cases between unmarried parents. *See Tenn. R. Juvenile Procedure,* 101(c)(3).

    ii. The 16th Judicial District's Chancery and Circuit Rule 7 provides detailed procedures and timelines for the adjudication of pretrial motions.

34. This overtly discriminatory two-tiered system treats children of unmarried parents in a separate and unequal manner.

## CLAIMS FOR RELIEF

**Count I**
**Violation of the First Amendment – Right of Access**
**Unlawful Confidentiality Rules of the Juvenile Court**
**42 U.S.C. § 1983**

**(Defendants Wright, Lampley, and Rutherford County)**
**(Declaratory Judgment, Injunctive Relief, and Damages)**

35. Civil lawsuits involving the support and custody of minor children who are not subject to dependency and neglect claims have historically been open to the public.

36. Public access plays a significant positive role in the functioning of civil child custody proceedings by ensuring due process, accountability through public oversight, and equal treatment under the law.

37. The Defendants' broad restrictions on the dissemination of records like final orders – even those records which do not contain the names of minor children – are not narrowly tailored to serve any overriding interest. This fact is made obvious by comparison with the public nature of identical documents from other custody cases where the only difference is the marital status of the parent parties. It is made even more obvious by the fact that Tennessee Court of Appeals opinions arising from Juvenile Court proceedings *are* public, which gives the lie to any

pretense of a generalized confidentiality concern for Juvenile Court custody proceedings.

38. The Defendants' restrictions effectively block access and Dr. Wilson's ability to disclose these records to state regulatory bodies, the state legislature, and the public at large.

39. Judge Lampley enacts and maintains the County's local rules in his administrative capacity, for which he does not enjoy judicial immunity.

40. The Local Rules are formal County policies. The Juvenile Court is a county court, not an "arm of the state," and its administrative policies are county policies for 42 U.S.C. § 1983 purposes.

41. As a result, the Defendants' Local Rules violate Dr. Wilson's First Amendment right of access, inflicting ongoing harm on him.

**Count II**
**Violation of the First Amendment – Prior Restraint**
**Unlawful Confidentiality Rules of the Juvenile Court**

**42 U.S.C. § 1983**

**(Defendants Wright, Lampley, and Rutherford County)**
**(Declaratory Judgment, Damages, and Injunctive Relief)**

42. The Defendants' local rules restrict the disclosure of all court records, including final orders like Dr. Wilson's, "to anyone for any purpose other than the proceedings currently before this Court without further authorization from the Judge of the Rutherford County Juvenile Court."

43. Dr. Wilson's intended publications constitute core First Amendment protected activity because he seeks to truthfully report misconduct by elected officials and an unelected juvenile court magistrate judge.

44. This rule prohibits publication or dissemination before it occurs.

45. The Defendants' local rules lack procedural safeguards and are not narrowly tailored to a compelling government interest. This is obvious when comparing the treatment of Dr.

Wilson's records with those of any parallel, identical proceeding in Circuit or Chancery court where the only difference is the martial status of the party parents. It is made even more obvious by the fact that Tennessee Court of Appeals opinions arising from Juvenile Court proceedings *are* public, which gives the lie to any pretense of a generalized confidentiality concern for Juvenile Court custody proceedings.

46. The Defendants' local rules target speakers based on their identity as parties to juvenile court proceedings (rather than Circuit or Chancery Court proceedings) and based on their content (by restricting juvenile court orders while permitting identical Chancery or Circuit Court filings to be disseminated).

47. Judge Lampley enacts and maintains the County's local rules in his administrative capacity, for which he does not enjoy judicial immunity.

48. The Local Rules are formal County policies. The Juvenile Court is a county court, not an "arm of the state," and its administrative policies are county policies for 42 U.S.C. § 1983 purposes.

49. As a result, the Defendants' Local Rules constitute a prior restraint in violation Dr. Wilson's First Amendment rights, inflicting ongoing harm on him.

### Count III
### Violation of the Fourteenth Amendment Right to Procedural Due Process
### Unlawful Confidentiality Rules of the Juvenile Court

### 42 U.S.C. § 1983

### (Defendants Wright, Lampley, and Rutherford County)
### (Declaratory Judgement, Damages, and Injunctive Relief)

50. Dr. Wilson has a fundamental liberty interest in freedom of speech which entitles him to procedural due process protection before restricting his ability to disseminate his own court records.

51. The Defendants' local rules present a high risk of erroneous deprivation of that interest and continue to deprive Dr. Wilson of that interest without adequate procedural safeguards.

52. The government's interest in maintaining confidentiality of Dr. Wilson's civil custody case files is no greater than the interests present in any parallel Circuit or Chancery Court custody case proceeding where the only difference is the marital status of the parties.

53. The viability of alternative safeguards – like those employed in Circuit or Chancery Court cases involving the redaction of minor's names and dates of birth – would adequately protect the government's legitimate interests in maintaining the privacy of minor children. Indeed, the fact that Tennessee Court of Appeals opinions arising from Juvenile Court proceedings *are* public, which gives the lie to any pretense that there is a generalized confidentiality concern for Juvenile Court custody proceedings.

54. Judge Lampley enacts and maintains the County's local rules in his administrative capacity, for which he does not enjoy judicial immunity.

55. The Local Rules are formal County policies. The Juvenile Court is a county court, not an "arm of the state," and its administrative policies are county policies for 42 U.S.C. § 1983 purposes.

56. Defendants' Local Rules violate Dr. Wilson's constitutional Due Process rights, inflicting ongoing harm on him.

**Count IV**
**Violation of the Fourteenth Amendment Right to Equal Protection**
**Separate but Unequal Custody Court Systems**

**42 U.S.C. § 1983**
**(Defendants Wright, Lampley, and Rutherford County)**
**Declaratory Judgment, Damages, and Injunctive Relief**

57. Defendants' local rules maintain a two-tiered, separate but unequal system of adjudicating identical civil custody claims between parents depending solely on their marital status.

58. Because marital custody disputes do not take place in juvenile court, the Defendants' local rules expressly classify Dr. Wilson and his claims into the inferior, confidential tier based solely on his marital status.

59. The classification has a disparate impact on unmarried fathers like Dr. Wilson, because under Tennessee law unmarried mothers begin with 100% default custody and thus have substantial built-in advantages in all juvenile court proceedings.

60. The classification burdens Dr. Wilson's right to free speech and the right to parent his child.

61. There is no important or compelling government interest in adjudicating civil custody claims like Dr. Wilson's in juvenile court while adjudicating the claims of married (or formerly married) parties in Circuit or Chancery court.

62. There is no rational basis to justify the imposition of the Defendants' juvenile court local rules and customs on unmarried fathers like Dr. Wilson while adjudicating the claims of married (or formerly married) parties in Circuit or Chancery Court.

63. Judge Lampley enacts and maintains the County's local rules in his administrative capacity, for which he does not enjoy judicial immunity.

64. The Local Rules are formal County policies. The Juvenile Court is a county court, not an "arm of the state," and its administrative policies are county policies for 42 U.S.C. § 1983 purposes.

65. The County's local rules violate Dr. Wilson's constitutional Equal Protection rights, inflicting ongoing harm on him.

## REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.

2. That this cause be tried by a jury.

3. That judgment for Plaintiff enter against the Defendants on each count.

4. That Plaintiff be awarded nominal and compensatory damages..

5. That the Court issue a preliminary injunction directing Defendants to cease interfering with Dr. Wilson's right to disclose the juvenile court filings.

6. That the Court subsequently enter a permanent injunction directing the same.

7. That the Court enter a declaratory judgment to the effect that the prohibition on the disclosure of juvenile court custody case records is unconstitutional.

8. That Plaintiff be awarded attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).

9. That the court costs in this matter be taxed to Defendants.

10. That Plaintiff be awarded all other relief to which it may appear she is entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
7000 Executive Center Drive, Suite 240
Brentwood, TN 37027
T: (615) 891-3901 / F: (615) 229-6387
E: Kyle@relentlesslaw.com

*s/ Wesley Clark*
Wesley Clark, BPR 32611
Brazil Clark, PLLC
760 E Argyle Ave.
Nashville, TN 37203
T: 615-730-8619 / F: 615-634-3651 (fax)
E: wesley@brazilclark.com